**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KANI C. LITTLE | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | NO.: 1:24-cv-00380 - SHR |
| | ) | |
| LIONEL PIERRE, ROGER LUCAS, | ) | |
| LATONYA RAY, JILL CUFFARO | ) | |
| LUIS RODRIGUEZ, | ) | |
| GREGORY BRIGGS, | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS PIERRE, LUCAS, RAY, CUFFARO AND BRIGGS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Respectfully submitted,

**Lavery Law**

By: */s/ Murray J. Weed*
Murray J. Weed, Esquire
Atty No. 329717
Frank J. Lavery, Jr., Esquire
Atty No. 42370
225 Market Street, Suite 304
Harrisburg, PA 17108-1245
mweed@laverylaw.com
flavery@laverylaw.com
*Attorneys for Defendants Pierre, Lucas, Ray, Cuffaro and Briggs*

DATE: July 8, 2024

# TABLE OF CONTENTS


I. PROCEDURAL POSTURE ........ 1

II. FACTS ALLEGED ........ 1

a. Deputy Warden Lionel Pierre ........ 1

b. Major Roger Lucas ........ 4

c. Deputy Warden Laytona Ray ........ 4

d. Deputy Warden Jill Cuffaro ........ 4

e. Corrections Officer Luis Rodriguez ........ 4

f. Warden Gregory Briggs ........ 5

III. LEGAL STANDARD ........ 5

a. Motion to Dismiss ........ 5

b. Plaintiff's Constitutional Claims ........ 6

IV. ISSUES PRESENTED ........ 8

V. ARGUMENTS AND AUTHORITY ........ 9

1. Failure to Exhaust Administrative Remedies: ........ 9

a. Grievance Process ........ 9

b. Prerequisite to Suit ........ 11

2. Failure to State a Claim for Unlawful Search and Seizure or Deprivation of Property ........ 13

3. Failure to State a Claim for Denial of Access: ........ 17

a. Fourteenth Amendment ........ 17

b. Sixth Amendment ........ 20

4. Failure to State a Claim under the First Amendment ........ 21

a. Retaliation ........ 21

b. Free Exercise of Religion ........ 21

5. Movant-Defendants Cannot Be Held Liable for Actions of Officer Rodriguez ........ 24

6. Each Movant Should be Dismissed Due to Lack of Personal Involvement ........ 25

a. Deputy Warden Pierre ........ 27

b. Major Lucas ........ 28

c. Deputy Warden Ray ........ 30

d. Deputy Warden Cuffaro ........ 32

e. **Warden Briggs** ........ 32

7. **Each Movant Should Be Dismissed From the Excessive Force Claims and Failure to Intervene for Lack of Personal Involvement** ........ 33

8. **Each Movant Should be Dismissed as To Excessive Force and Failure to Intervene on the Merits** ........ 33

9. **Each Movant Enjoys Qualifed Immunity and is Immune From Official Capacity Claims** . 33

10. **No Deliberate Indifference to Plaintiff's Medical Needs** ........ 40

11. **Amendment Futility** ........ 42

**VI. CONCLUSION** ........ 43

**CERTIFICATION PURSUANT TO MIDDLE DISTRICT LOCAL RULE 7.8(b)(3)** ........ 44

**CERTIFICATE OF SERVICE** ........ 45

# TABLE OF AUTHORITIES

## Cases

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004)....7
*Abdullah v. Briggs*, 2024 U.S. Dist. LEXIS 55578 (M.D. Pa. Mar. 27, 2024)....22, 23
*Allen v. Warden of Dauphin Cnty. Jail*, 2008 U.S. Dist. LEXIS 74752, 2008 WL 4452662 (M.D.Pa. Sept. 29, 2008)....31
*Anderson v Venango County*, Pa., 458 Fed. Appx. 161 (3d Cir. 2012....20
*Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011)....39
*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)....39
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....6
*Ashford v. Hawkinberry*, 2016 U.S. Dist. LEXIS 71921 (W.D. Pa., Jun. 2, 2016)....31, 32
*Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519 (1983)....20
*Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003)....26
*Banks v. Rozum*, 2014 U.S. Dist. LEXIS 182806, 2015 WL 1186224 (M.D. Pa. 2015)....21
*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007)....26
*Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007)....6
*Bell v. Wolfish,* 441 U.S. 520 (1979)....7, 34
*Brooks v. Kyler*, 204 F.3d 102 (3d Cir. 2000)....35, 36
*Callahan v. Woods*, 685 F.2d 679 (9th Cir. 1981)....22
*Castro v. United States*, 540 U.S. 375 (2003)....6
*Christopher v. Harbury*, 536 U.S. 403 (2002)....18
*Clark v. Doe*, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855 (E.D. Pa. Oct. 13, 2000)....41
*Clouser v. Johnson*, 684 Fed. Appx. 243 (3d Cir. 2017)....20
*Coman v. ACA Compliance Group*, 2021 U.S. Dist. LEXIS 239987 (W.D. Pa. Dec. 14, 2021)....12
*Culpepper-Smith v. United States*, 1998 U.S. Dist. LEXIS 13220 (E.D. Pa. Aug. 24, 1998)....42
*Curtician v. Kessler*, 2010 U.S. Dist. LEXIS 142858 (W.D. Pa. 2010)....21
*Davage v. United States*, 1997 U.S. Dist. LEXIS 4844 (E.D. Pa. Apr. 11, 1997)....31
*DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000)....22, 23
*Dickerson v. Gordon*, 2015 U.S. Dist. LEXIS 131873, 2015 WL 5785575 (M.D. Pa. 2015)....21
*Drumgo v. Burris*, 2015 U.S. Dist. LEXIS 98768, 2015 WL 4591957 (D. Del. 2015)....21
*Durham v. Dep't of Corr.*, 173 Fed. App'x. 154 (3d Cir. 2006)....17
*Durmer v. O'Carroll,* 991 F.2d 64....41
*Estelle v. Gamble,* 429 U.S. 97 (1976)....8, 40
*Evancho*, 423 F.3d at 353....25, 26, 27, 28, 32, 33, 41
*Farmer v. Brennan*, 511 U.S. 825 (1994).....40
*Fear v. Pennsylvania*, 413 F.2d 88 (3d Cir. 1969)....42
*Fillebrown v. Zettlemoyer*, 1996 U.S. Dist. LEXIS 11495 (E.D.Pa. Aug. 8, 1996)....7
*Foman v. Davis*, 371 U.S. 178, 183, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)....43

*Foster v. Raleigh*, 2010 U.S. Dist. LEXIS 135427 (M.D.Pa. Oct. 20, 2020) ........ 5, 25
*Freeman v. Dept. of Corr.*, 477 App'x 385 (3d Cir. 2011) ........ 31, 32
*Gary v. Pa. Human Rels. Comm'n*, 497 F. App'x 223 (3d Cir. 2012) ........ 12
*Giandonato v. Montgomery County*, 1998 U.S. Dist. LEXIS 8038, 1998 WL 314694 (E.D. Pa. May 22, 1998) ........ 40
*Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427 (3d Cir. 2005) ........ 18
*Giles v. Kearney*, 571 F.3d 318 (3d Cir. 2009) ........ 34, 35, 36
*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005) ........ 39
*Gilmore-Bey v. Coughlin*, 929 F. Supp. 146 (S.D.N.Y. 1996) ........ 22
*Gittelmacker v. Prasse*, 428 F.2d 1 (3d Cir. 1970) ........ 42
*Golson v. Harold*, 2017 U.S. Dist. LEXIS 134184 (M.D. Pa. Aug. 22, 2017) ........ 37
*Graham v. Connor*, 490 U.S. 386 (1989) ........ 34
*Gregg v. Georgia*, [428 U.S. 153] at 173 (1976) ........ 8
*Grimes v. Yoos,* 298 F. App'x 916 (11th Cir. 2008) ........ 39
*Hafer v. Melo*, 502 U.S. 21 (1991) ........ 40
*Haines v. Kerner*, 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) ........ 5, 6
*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........ 39
*Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) ........ 30, 31, 32
*Hewitt v. Helms*, 459 U.S. 460 (1983) ........ 16
*Hope v. Pelzer*, 536 U.S. 730 (2002) ........ 15
*Hudson v. McMillian*, 503 U.S. 1 (1992) ........ 15, 21
*Hudson v. Palmer*, 468 U.S. 517 (1984) ........ 15, 16, 17, 21, 36
*In re Burlington* ........ 13
*Ingraham v. Wright,* 430 U.S. 651 (1977) ........ 7
*Iqbal*, 556 U.S. at 663 ........ 27, 29
*Jackson v. Beard*, 2016 U.S. Dist. LEXIS 86807 (M.D. Pa., July 5, 2016) ........ 35, 36, 37
*Jackson v. Whalen*, 568 F. App'x 85 (3d Cir. 2014) ........ 17
*Johnson v. Orr*, 776 F.2d 75 (3d Cir. 1985) ........ 12
*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) ........ 22
*Jones v. Bock*, 549 U.S. at 219 ........ 11, 12
*Jones v. Brown*, 461 F.3d 353 (3d Cir. 2006) ........ 18
*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977) ........ 30, 32
*Jutrowski v. Township of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018) ........ 37
*Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010) ........ 19, 39, 40
*Kirby v. Illinois*, 406 U.S. 682 (1972) ........ 20
*Kokinda v. Pa. Dept. of Corrections*, 2016 U.S. Dist. LEXIS 151244 (W.D. Pa., Oct. 31,2016). ........ 20
*LaFaut v. Smith* 834 F.3d 389 (4th Cir. 1987) ........ 8
*Lanza v. New York*, 370 U.S. 139 (1962) ........ 16
*Lewis v. Casey*, 518 U.S. 343 (1996) ........ 17,18
*Lim v. Cruz*, 2015 U.S. Dist. LEXIS 30746 (M.D Pa. March, 13, 2015) ........ 24
*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ........ 39
*Malley v. Briggs*, 475 U.S. 335(1986) ........ 39

*Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164 (3d Cir. 2016) ...................... 39
*Marshall v. Corbett*, 2019 U.S. Dist. LEXIS 134520 (M.D. Pa. Aug. 8, 2019) ........................................ 22
*Martinez v. California*, 444 U.S. 277 (1980) .......................................................................................... 30
*Massey v. Helman*, 259 F.3d 641 (7th Cir.2001) ...................................................................................... 31
*Maulsby v. Beard*, 223 Fed. App'x. 192 (3d Cir. 2007) ............................................................................ 17
*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................................................................................. 38
*Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987) ................. 40
*Natale v. Camden County Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) ....................................................... 7
*Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997) .......................................................................................... 17
*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) ................................................................................... 22
*Paladino v. Newsome*, 885 F. 3d 203 (3d Cir. 2018) ................................................................................. 13
*Parratt v. Taylor*, 451 U.S. 527 (1981) ..................................................................................................... 16
*Pell v. Procunier*, 417 U.S. 817 (1974) ..................................................................................................... 16
*Pennsylvania ex rel. Gatewood v. Henrick*, 368 F.2d 179 (3d Cir. 1966) ................................................. 42
*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192 (3d Cir. 1993) ................. 12, 13
*Phillips v. Cnty of Allegheny*, 515 F3d 224 (3d Cir. 2008) ........................................................................ 42
*Piskanin v. Hammer*, 2005 U.S. Dist. LEXIS 28135 (E.D. Pa. Nov. 14, 2005) ................................. 18, 19
*Procunier*, 416 U.S. at 405 ....................................................................................................................... 23
*Rega v. Sw. Area Agency on Aging*, 2017 U.S. Dist. LEXIS 105240, 2017 WL 3447889 (W.D. Pa. July 6, 2017) ........................................................................................................................................... 20
*Rhodes v. Chapman*, 452 U.S. 337 (1981) ................................................................................................. 15
*Rieco v. Scire*, 2014 U.S. Dist. LEXIS 148977, 2014 WL 5343221 (W.D. Pa. Oct. 20, 2014) ................ 31
*Robinson v. Love*, 155 F.R.D. 535 (E.D. Pa. 1994) ................................................................................... 31
*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1998) ...................................... 14, 23, 25, 26, 27, 28, 30, 33
*Romansky v. Stickman,* 147 Fed. App'x. 310 (3d Cir. 2005) ............................................................ 18, 19
*Rosario v. Strawn*, 2020 U.S. Dist. LEXIS 135559 (W.D., Pa. July 29, 2020) ......................................... 38
*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010) ........................................................................ 6
*Seeger*, 380 U.S. at 184-186 ...................................................................................................................... 23
*Shaw v. Murphy*, 532 U.S. 223 (2001) ........................................................................................................ 6
*Small v. Camden, Cty*., 728 F.3d (3d Cir. 2013) ........................................................................................ 13
*Small v. Lehman*, 98 F.3d 762 (3d. Cir 1996) ............................................................................................ 22
*Soto v. Dickey*, 744 F.2d 1260 (4th Cir. 1984) ........................................................................................... 35
*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) ............................................................................................. 42
*Stilter v. Rhay*, 371 F.2d 420 (9th Cir. 1967) ............................................................................................. 42
*The Fair v. Kohler Die & Specialty Co*., 228 U.S. 22, 25, 1913 Dec. Comm'r Pat. 530 (1913) .................. 6
*Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410 (3d Cir. 2000) ............................................ 16, 17
*Turner v. Safley*, 482 U.S. 78 (1987) ................................................................................................. 22, 23
*Twombly,* 550 U.S. at 570 ......................................................................................................................... 27
*United States ex rel. Ingram v. Montgomery County Prison Bd*., 369 F. Supp 873 (E.D. Pa. 1974) ......... 42
*United States ex rel. Walker v. Fayette Cnty*., 599 F.2d 573 (3d Cir. 1979) ..................................... 41, 42
*United States v. Salerno*, 481 U.S. 739 (1987) ............................................................................................ 7
*United States v. Seeger*, 380 U.S. 163 (1965) ............................................................................................ 22

*Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976). .......... 42
*Whitley v. Albers*, 475 U.S. 312 (1986) .......... 34, 35
*Wilkins v. Gaddy*, 559 U.S. 34 (2010) .......... 32, 36
*Wilson v. Horn*, 971 F. Supp. 942 (E.D. Pa, 1997) .......... 31
*Wilson v. Seiter*, 501 U.S. 294 (1991) .......... 8
*Wolfe v. McDonnell* 418 U.S. 539 (1974) .......... 15
*Woodford v. Ngo*, 548 U.S. 81 (2006) .......... 11, 12
*Woodson v. Gibbs*, 2014 U.S. Dist. LEXIS 57743 (E.D. Pa., Apr. 25, 2014) .......... 20

## Statutes

28 U.S.C. §1915 .......... 5, 25
42 U.S.C. §1983 .......... 23, 30, 42
42 U.S.C. §1997 .......... 11

## Rules

Fed.R.Cvi.P 12(b)(6) .......... passim

The Movant-Defendants named above submit this Brief in Support of Defendants' Motion to Dismiss Plaintiff's Complaint and incorporate by reference filed conterminously herewith their Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

## I. <u>PROCEDURAL POSTURE</u>

Plaintiff's suit was filed on March 4, 2024. [Doc. 1].

## II. <u>FACTS ALLEGED</u>

Plaintiff is a pretrial detainee housed at Dauphin County Prison. The Movant-Defendants are managerial level employees of the Prison, and each hold the rank of Warden or Deputy Warden, except for Major Lucas. [Doc. 1, p. 2-3 of the form]. All of the events noted below occurred between November 16, 2023, and December 20, 2023. [Id., p. 5]. For the convenience of the Court the first set of accusations are set out in greater detail because they are repeated generally by Plaintiff thereafter. Plaintiff makes the following claims:

### a. <u>Deputy Warden Lionel Pierre</u>

1. Confirmed, and assisted with orders given by an unknown source to search Plaintiff's cell. [Doc. 1, p. 5].

2. Due to the cell search Plaintiff's property was taken and was later lost. The property included writing material, paper and envelopes, toiletries, the Prison provided electronic tablet, sheets, and extra clothing. [Id.].

3. The tablet being removed prevented access to the law library, mail, and religious services. [Id.].

4. Pierre confirmed, and assisted with orders given by an unknown source to turn off all the lights in the area where Plaintiff and others were housed for 15 days. [Id.].

5. All of the above events seemed to occur while Plaintiff was in disciplinary segregation. [Id.].

6. Deputy Warden Pierre and others initiated and assisted with a SERT [sic] team extraction of Plaintiff from his cell on December 8, 2023. [Id., p. 6].

7. Deputy Warden Pierre and others "came with the SERT team." [Id]. The context of this language – and the absence of any further personal reference to the Deputy Warden – indicates a figurative colloquialism for his decision to send the team into the cell, rather than denoting the Deputy Warden Pierre's literal physical presence. [See original text].

8. The extraction occurred after Plaintiff complained for 10 minutes and after he was told to face the wall of his cell and kneel while the SERT team remained outside his cell. [Id.].

9. Plaintiff admits he faced the wall but refused to get on his knees. [Id.].

10. He claims he was handcuffed and had a belt on during this time. [Id.].

11. After Plaintiff's refusal to comply, the SERT Team entered the cell. [Id.].

12. Plaintiff then collided with someone's arm and was unconscious. [Id.]. He awoke later. [Id.].

13. He was told to remove his clothes for a search, and he refused. [Id.].

14. Force was again used against him to stop the resistance. He was also sprayed with oleoresin capsicum (OC spray). [Id.].

15. He was eventually placed in a restraint chair. [Id.].

16. He was then treated by medical personnel. [Id.].

17. Deputy Warden Pierre did nothing to stop or deescalate the encounter. [Id.].

18. He claims he is naming Deputy Warden Pierre in his individual and official capacities. [Id.].

Plaintiff alleges that Deputy Warden Pierre violated his First Amendment right to religious freedom; his right to be free of improper search and seizure under the Fourteenth Amendment; that he was subjected to cruel and unusual punishment and excessive force under the Eighth Amendment and Fourteenth Amendments; he was denied access to the courts in violation of the First Amendment; there was some violation of the Sixth Amendment; and there is another unspecified violation of the Fourteenth Amendment, perhaps related to the alleged denial of access to the courts.

**b. Major Roger Lucas**

The Major is accused of the same things as Deputy Warden Pierre and is sued in the same capacities. [Id., pp. 7-8].

**c. Deputy Warden Laytona Ray**

Deputy Warden Ray is accused of not answering Plaintiff's grievances. Also, Plaintiff claims that he was not given copies of his grievances. Plaintiff avers he named Deputy Warden Ray because she runs the grievance process. He alleges his Fifth Amendment rights were violated as a result of these acts. She is sued in her individual and professional capacities. [Id., p. 9].

**d. Deputy Warden Jill Cuffaro**

Deputy Warden Cuffaro is accused of the same things as Deputy Warden Ray and is sued in the same capacities. [Id., p. 11].

**e. Corrections Officer Luis Rodriguez**[1]

Officer Rodriguez was the lead officer that performed the cell search. He also is alleged to have turned off the lights for 15 days. He allegedly violated Plaintiff's rights of religious freedom under the First Amendment; participated in an illegal search and seizure under the Fourth Amendment; used cruel and unusual

[1] Movant-Defendants note that Officer Rodriguez is a codefendant, only, and is not a party to this Motion. However, based on Plaintiff's failure to exhaust administrative remedies the Officer should also be dismissed.

punishment under the Eighth and Fourteenth Amendments; denied Plaintiff access to the courts under the First, Sixth, and Fourteenth Amendments. [Id., p. 13].

**f. <u>Warden Gregory Briggs</u>**

Warden Briggs is alleged to have done all of the same things as Officer Rodriguez by giving "commanding 'orders.'" He is also sued in an individual and official capacity. [Id., p. 15].

## III. <u>LEGAL STANDARD</u>

**a. <u>Motion to Dismiss</u>**

28 U.S.C. §1915A (b)(1) provides that the Court must determine whether a *pro se* complaint by a prisoner "fails to state a claim upon which relief may be granted," adopting identical language to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This formulation of the standard applies to *pro se* complaints in the same terms, as noted by this Court in *Foster v. Raleigh*, 2010 U.S. Dist. LEXIS 135427, *11 (M.D.Pa. Oct. 20, 2020). While it is appropriate to hold the allegations of a *pro se* litigant "to less stringent standards than formal pleadings drafted by lawyers," (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), it does not alleviate the basic requirements of the statute. "'Liberal construction' of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure, and thus is consistent with the general principle that 'the party who brings

a suit is master to decide what law he will rely upon.'" *Castro v. United States*, 540 U.S. 375, 386 (2003).[2]

In order survive a Rule 12(b)(6) motion to dismiss; a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007). First, a court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); citing *Twombly*, *supra*, at 553-554. Second, a court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*.; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Courts must generously construe complaints drafted by *pro se* plaintiffs. *Haines*, 404 U.S. at 520-21. However, even under the most generous standard, Plaintiff fails to state a case upon which relief can be granted.

**b. <u>Plaintiff's Constitutional Claims</u>**

Many of the liberties and privileges enjoyed by citizens must be surrendered by prisoners. *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). Constitutional rights

[2] Quoting, *The Fair v. Kohler Die & Specialty Co*., 228 U.S. 22, 25, 1913 Dec. Comm'r Pat. 530 (1913).

of prisoners are therefore necessarily more limited in scope than those of non-prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545-48 (1979).

Plaintiff is a pre-trial detainee and as such the Eighth Amendment does not apply to him; rather the Fourteenth Amendment governs his action. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572,579 (3d Cir. 2004). However, courts apply an analogous standard to most claims under the Fourteenth Amendment as to those arising under the Eighth Amendment. *Id; Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

While the standard is generally comparable, the Constitution draws a clear distinction between convicts, who may be lawfully punished subject to the Eighth Amendment, and pretrial detainees, who may be restrained or regulated, but not for punitive purposes.[3] "The inquiry under the Fourteenth Amendment is whether conditions of confinement or inadequacy of medical care received by plaintiff 'amount to punishment of the detainee' or a mere incident of legitimate regulatory restraint." *Fillebrown v. Zettlemoyer*, 1996 U.S. Dist. LEXIS 11495, at 5 (E.D.Pa. Aug. 8, 1996).[4]

---

[3] See, *United States v. Salerno*, 481 U.S. 739, 747 (1987) (distinguishing between "impermissible punishment" and "permissible regulation" of pretrial detainees); see also, *Ingraham v. Wright,* 430 U.S. 651, 674 (1977) (holding that public school children may be lawfully confined to a classroom, but as the state cannot "physically punish an individual except in accordance with due process of law" the corporeal punishment policy was unconstitutional).

[4] *Id*., quoting, *Bell*, 441 U.S. at 535, 537.

Nevertheless, apart from the question of punitive purpose versus other legitimate penological purposes, the standard for deliberate indifference is the same. "[I]t is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).[5]

## IV. <u>ISSUES PRESENTED</u>

1. Has Plaintiff completed the grievance process prerequisite to file suit?

   **<u>Answer</u>:** No. Plaintiff has only completed the grievance process once, and that grievance is not related to the matters set out herein.

2. Were any Movant-Defendants personally involved with Plaintiff or his allegations?

   **<u>Answer</u>:** No. None of the supervising employees named here were personally involved in any matter of which the Plaintiff claims to be aggrieved.

3. Were Plaintiff's constitutional rights violated by any of the alleged actions of the Movant-Defendants?

---

[5] *Id*., quoting, *LaFaut v. Smith* 834 F.3d 389, 391-392 (4th Cir. 1987), quoting *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia*, [428 U.S. 153] at 173 [(1976)] proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.").

**Answer:** No. Plaintiff has failed to state a claim against Movant-Defendants upon which relief can be granted.

4. Does qualified immunity apply?

**Answer:** Yes. To the extent any of Plaintiff's rights were violated *arguendo*, Defendants enjoy official immunity and qualified immunity.

## V. ARGUMENTS AND AUTHORITY

### 1. Failure to Exhaust Administrative Remedies:

### a. Grievance Process

While Plaintiff's Complaint ranges far and wide, it focuses on the following allegations and events that allegedly occurred from November 16, 2023, until December 20, 2023:

1. Plaintiff's cell was searched, and he alleges items were taken from the same, including legal related items. [Doc. 1, p. 5].
2. The tablet assigned to him was taken during the search. [Id.].
3. Lights in the cell he occupied, as well as the cells of others, were turned off for 15 days. [Id.].
4. He was held in disciplinary segregation. [Doc. 1, p. 5].
5. At a later date, and after admitting in the Complaint that he refused to comply with a lawful order to face the back of his cell wall and kneel,

and his refusal to get on his knees, force was then used against him to gain compliance. He alleges excessive force. [Id.].

6. He claims he was not treated for injuries sustained after the force was used against him although, he also notes specific treatment by medical personnel. [Id., p. 6].

7. He claims there was a failure to intervene, to prevent, or stop the force used. [Id., p. 8].

8. He complains that he was not given copies of past grievances he filed. [Id., p. 9].

9. He complains his grievances have been ignored. [Id.].

The threshold procedural issue in this matter is whether Plaintiff completed the Dauphin County Prison's grievance procedure prior to suit. He did not.

The grievance process relevant to Plaintiff has four steps. *See*, Affidavit of Warden Briggs. (DOC. 26.3). Plaintiff has only completed the entire process relating to a single grievance, Number 389. That grievance was completed on March 14, 2023, and it relates to Plaintiff destroying an assigned tablet and smashing his own head into the wall of a corridor, as shown by video. That matter is not involved in the pending suit and therefore, cannot satisfy the prerequisite regarding the allegations in Plaintiff's Complaint. [Id.].

Plaintiff has one other pending grievance directly related to the matter complained of herein, Number 941. It is only in stage two of the process. [Id.]. Plaintiff filed a third grievance, which was administratively not continued because he complained of property taken during a cell search or "shakedown" grievance Number 1071. [Id.]. This grievance is a duplication of grievance Number 941 and as such, the duplicative grievance was administratively terminated so that 941 could continue. (DOC.26.3). Therefore, none of the matters in his Complaint are ripe for consideration by this Court at this time.

**b. <u>Prerequisite to Suit</u>**

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219, (2007); see also *Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006). To the extent Plaintiff's claims could be deemed to address Movant-Defendants – which, as argued below, they do not – *arguendo* they may be dismissed

for failure to exhaust on this alternative basis. *See*, *Gary v. Pa. Human Rels. Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) ("Nevertheless, we will summarily affirm on alternative grounds because [plaintiff's] claims lack merit.").

Exhaustion of administrative remedies is "integral to" the claims in Plaintiff's Complaint, and therefore should be considered by this Court without conversion of the Motion to Dismiss. (DOC. 1). *In re Burlington*, 114 F.3d at 1426; see, *Jones v. Bock*, 549 U.S. at 219; *Woodford*, 548 U.S. at 89-91.

In order to prove that Plaintiff failed to complete the process, Defendants were required to submit an Affidavit from Warden Gregory C. Briggs, showing the process existed, what the process was, and that Plaintiff did not complete it on issues relevant to this premature suit. (DOC. 26.3).

Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *Coman v. ACA Compliance Group*, 2021 U.S. Dist. LEXIS 239987 (W.D. Pa. Dec. 14, 2021), citing *In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a district court may consider the following: (1) exhibits attached to the complaint, *see, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); (2) documents that are "integral to or explicitly relied upon in the complaint," *In re Burlington*, 114 F.3d at 1426 (citation omitted), including, for example, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion

to dismiss if the plaintiff's claims are based on the document," *Pension Benefi*t, 998 F.2d at 1196; and "(3) matters of public record, *Pension Benefit*, 998 F.2d at 1196 [without converting the motion to a summary judgment motion]." As such, an Affidavit addressing compliance with the Prison's grievance procedure is appropriate for this Court's consideration as a document integral to, and relied upon, for the Complaint. (*Id.*).

Based on the Affidavit attached to Defendants' Motion to Dismiss (DOC. 26.3), one of many reasons to dismiss the Complaint is that Plaintiff did not complete the grievance process, and as such, the Court is without jurisdiction to consider his claims and should dismiss the action. Such an exhibit is appropriate for this Court to consider in a Rule 12(b)(6) motion to dismiss. *In re Burlington*, *supra*; *Pension Benefit*, *supra*.

In the alternative, the Court may convert this Motion to Dismiss into a Motion for Summary Judgment pursuant to *Paladino v. Newsome*, 885 F. 3d 203 (3d Cir. 2018) and *Small v. Camden, Cty*., 728 F.3d (3d Cir. 2013). While the procedural mechanism would differ, the result should be identical, Plaintiff's Complaint must be dismissed as premature.

**2. Failure to State a Claim for Unlawful Search and Seizure or Deprivation of Property**

*Arguendo*, even were Plaintiff's Complaint is not unripe for the reasons above, it nevertheless fails on the merits and must be dismissed accordingly. Plaintiff

alleges that Movant-Defendants (except Deputy Wardens Ray and Cuffaro) took his property during a cell search "shakedown" on an unspecified date (somewhere between November 16 and December 20, 2023). [Doc. 1, p. 13].

Specifically, Plaintiff claims that the removal, and later alleged loss of various items ranging from legal materials, writing materials, hygiene materials, and the Prison assigned tablet violated his rights, including First Amendment religious freedom exercise (via tablet access), his right to be free from illegal search and seizure under the Fourth Amendment, cruel and unusual punishment, Eighth and Fourteenth Amendments, denial of access to the courts under the First and Sixth Amendments, as well as the Fourteenth Amendment. None of these claims are sufficient to survive a Rule 12(b)(6) analysis.

Movant-Defendants did not enter his cell literally, but by alleged "orders" and "Confirm[ing]" and "Assist[ing]." Plaintiff alleges all Movant-Defendants acted under unspecified "orders" from unidentified person(s) and that they allegedly "Confirmed" and "Assisted" in the taking should be dismissed with prejudice from these claims because of their lack of personal involvement. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Plaintiff claims that Rodriguez, personally, during a cell search took Plaintiff's law work and legal mail, writing materials, hygiene products, Prison assigned tablet, and extra clothing. His items were allegedly lost and not returned to

him. [Doc. 1, pp. 7, 13]. The grievance is currently ongoing, specifically Number 941. (DOC. 26-3). These claims are therefore unripe and should be dismissed.

Plaintiff does not claim physical injury from the cell search. The Eighth and Fourteenth Amendments forbid the unnecessary and wanton infliction of pain without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737-738 (2002), citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). There is no claim for *de minimis* use of force. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (not "every malevolent touch by a prison guard gives rise to a federal cause of action."). Plaintiff's Complaint does not establish unnecessary or wanton infliction of pain. Indeed, his averred noncompliance and the gradual escalation in force averred indicate the use of force was lawful.

Plaintiff's claims alleging unlawful search and seizure must be dismissed. "[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 525 (1984). A prisoner does not have a reasonable expectation of privacy against searches of his cell or person for safety or for contraband. The legitimate objectives of prison administration allow for such searches and seizures. *Hudson,* 468 U.S. at 527, citing *Wolfe v. McDonnell* 418 U.S. 539, 566 (1974);

*Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Lanza v. New York*, 370 U.S. 139, 143-144 (1962); *Pell v. Procunier*, 417 U.S. 817, 822-823 (1974).

As such, Plaintiff has no right to prevent the Prison from searching his cell. Plaintiffs do have limited rights under the Fourteenth Amendment not to be deprived of property without due process of the law, however, the Fourth Amendment does not protect an inmate from seizures of his property. *Hudson,* 468 U.S. at 528-29. Even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Id.* at 533. There is no due process right to be heard prior to the initial deprivation of the property as long as an opportunity to be heard is later granted "at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540-541 (1981). This is particularly true when a prison must act quickly to preserve security and thwart inmates from disposing of contraband. *Hudson*, 468 U.S. at 529; *Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 421 (3d Cir. 2000).

Here, the grievance process and the fact that grievance Number 941 remains in process, is a more than adequate post-deprivation remedy. The remedy is similar to that afforded by the Commonwealth's Department of Corrections and the Third Circuit has established that "the Pennsylvania Department of Corrections' grievance procedure provides an adequate post-deprivation remedy." *Durham v. Dep't of*

*Corr.*, 173 Fed. App'x. 154, 157 (3d Cir. 2006) (citing *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)). The Fourth Amendment claims as to the cell search must be dismissed.

To the extent that the Plaintiff alleges any other violation from the loss of his personal property, a §1983 action cannot be maintained for negligent or intentional deprivation of property where the state provides an adequate post-deprivation remedy. *See, Hudson,* 468 U.S. at 533 (no constitutional violation where prison guard deliberately and maliciously destroyed property during search of inmate's cell and several common law remedies were available); *Maulsby v. Beard*, 223 Fed. App'x. 192, 193-194 (3d Cir. 2007).

**3. <u>Failure to State a Claim for Denial of Access</u>:**

**a. <u>Fourteenth Amendment</u>**

Plaintiff's claims as to denial of access to the courts must also be dismissed. To prevail on an alleged denial of access to the courts claim, a plaintiff "is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). The Supreme Court includes an actual injury requirement to the right to access cases. *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997). The Court held that to pursue a claim of denial of access to the courts an inmate must allege actual injury – that the prison's action hindered his efforts to

pursue a non-frivolous legal claim." *Lewis*, 518 U.S. at 351; *Jones v. Brown*, 461 F.3d 353, 359 n.6 (3d Cir. 2006) (affirming the actual injury requirement for access-to-court claims).

The Court has recently clarified that a complaint alleging an access to court claim must plead the merits of the underlying claim that the plaintiff has been denied access to, with specificity, in order to survive a Rule 12(b)(6) motion to dismiss. *Christopher v. Harbury*, 536 U.S. 403, 415-17 (2002). In order to state a claim, a plaintiff must identify: (1) a nonfrivolous underlying cause of action that they were unable to file; and (2) plead that the claim would provide a remedy that could not otherwise be obtained. *Romansky v. Stickman,* 147 Fed. App'x. 310, 312 (3d Cir. 2005) (per curiam) (quoting *Christopher*, 536 U.S. at 415-416 ("the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."); *see also*, *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 444-445 (3d Cir. 2005) *cert. denied* 547 U.S. 1035, 126 S. Ct. 1571, 164 L. Ed. 2d 326 (2006); *Piskanin v. Hammer*, 2005 U.S. Dist. LEXIS 28135, at 38 (E.D. Pa. Nov. 14, 2005).

A Federal District Court in the Eastern District also granted a motion to dismiss a *pro se* plaintiff's access to the court claim on similar grounds. *Piskanin*, 2005 U.S. Dist. LEXIS 28135. In that case, the plaintiff claimed that a guard had seized a writ of habeas corpus when placing the plaintiff on suicide watch following

his arrest and that this petition was never returned to him. *Id*., 2005 U.S. Dist. LEXIS 28135, at 4-5. The court dismissed plaintiff's access to court claim because the complaint only stated that the guard had seized the writ of habeas corpus and did not describe the basis of that petition so the court could determine whether it was nonfrivolous or whether plaintiff was able to assert the basis for that petition in any other action. *Id*, 2005 U.S. Dist. LEXIS 28135, at 38-39.

*Romansky* and *Piskanin* stand for the proposition that simply asserting the loss of a legal claim is insufficient to survive a Rule 12(b)(6) motion. *Id*.; *Romansky,* 147 Fed. App'x. at 312. Instead, a plaintiff, even one proceeding *pro se*, must plead the "lost" claim with specificity so that the court can determine whether the defendant's actions deprived the plaintiff of a nonfrivolous legal claim. Plaintiff here, fails to plead his access to courts claim with specificity and only avers generally that the Prison seized necessary legal materials from his cell. This is insufficient to survive a Rule 12(b)(6) motion.

Plaintiff's Complaint fails to plausibly show that he suffered an actual injury for purposes of an access to courts claim. Based on the alleged facts, it is clear that Defendants did not cause Plaintiff to lose a nonfrivolous or arguable claim. Plaintiff's Complaint, in and of itself, and the fact that Plaintiff states he filed multiple grievances and his ability without impediment to file this lawsuit, mitigates against an acceptance of the allegation that he was deprived of writing materials or that his

legal mail was destroyed in any meaningful way that negatively impacted his criminal case, or this civil case. This claim should be dismissed with prejudice, as allowing amendment on this point would be futile. *Kokinda v. Pa. Dept. of Corrections*, 2016 U.S. Dist. LEXIS 151244 (W.D. Pa., Oct. 31,2016).

**b. <u>Sixth Amendment</u>**

Plaintiff has failed to plead sufficient facts to show how Movant-Defendants violated his rights under the Sixth Amendment. It is inappropriate to "assume that [the plaintiff] can prove facts that [he] has not alleged…" *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). No facts supporting this claim are presented and as such, this claim should be dismissed. *Woodson v. Gibbs*, 2014 U.S. Dist. LEXIS 57743 (E.D. Pa., Apr. 25, 2014). Further, nothing alleged in his Complaint implicates any right secured by the Sixth Amendment.[6]

[6] *Rega v. Sw. Area Agency on Aging*, 2017 U.S. Dist. LEXIS 105240, 2017 WL 3447889, at 6 (W.D. Pa. July 6, 2017) (holding that Sixth Amendment guarantees only apply to "criminal prosecutions") (citing *Kirby v. Illinois*, 406 U.S. 682, 690 (1972)). See also *Clouser v. Johnson*, 684 Fed. Appx. 243, 247 (3d Cir. 2017); *Anderson v Venango County*, Pa., 458 Fed. Appx. 161, 164 (3d Cir. 2012) ("to prevail on a § 1983 claim predicated on the [Sixth Amendment's] right to a fair trial, the plaintiff must show that the government's alleged pretrial misconduct resulted in an unfair trial") (citations omitted).

### 4. **Failure to State a Claim under the First Amendment**

### a. **Retaliation**

"Cell searches are an ordinary part of life for prison inmates" and do not generally dissuade inmates from exercising their First Amendment rights. *Dickerson v. Gordon*, 2015 U.S. Dist. LEXIS 131873, 2015 WL 5785575, at 6 (M.D. Pa. 2015).[7]

In general, "courts have consistently held that a cell search is not an 'adverse action' for retaliation purposes." *Curtician v. Kessler*, 2010 U.S. Dist. LEXIS 142858 (W.D. Pa. 2010).[8] There is nothing whatsoever to show that the cell search was retaliatory, nor to refute the broad discretion afforded to prison authorities conducting cell searches necessary to maintain safety and security in a carceral context. *Hudson,* 468 U.S. at 527.

### b. **Free Exercise of Religion**

Plaintiff asserts a First Amendment free exercise claim against the Defendants regarding access to "religious services" from the confiscation of the prison-issued tablet computer. [Doc. 1, p. 5].

---

[7] See *Drumgo v. Burris*, 2015 U.S. Dist. LEXIS 98768, 2015 WL 4591957, at 5 (D. Del. 2015), aff'd, 661 Fed. Appx. 758, 2016 U.S. App. LEXIS 16492, 2016 WL 4698258 (3d Cir. Sept. 8, 2016).

[8] See also *Banks v. Rozum*, 2014 U.S. Dist. LEXIS 182806, 2015 WL 1186224, at 7 (M.D. Pa. 2015).

Inmates retain protections afforded by the First Amendment's free exercise clause. *Turner v. Safley*, 482 U.S. 78 (1987),[9] *Abdullah v. Briggs*, 2024 U.S. Dist. LEXIS 55578 at 8-9 (M.D. Pa. Mar. 27, 2024). However, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of First Amendment rights. *Id.*

Only beliefs that are: (1) sincerely held; and (2) religious in nature are entitled to constitutional protection. *Abdullah*, 2024 U.S. Dist. LEXIS 55578 at 9, n.41; *DeHart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000), citing *United States v. Seeger*, 380 U.S. 163, 185 (1965); *Callahan v. Woods*, 685 F.2d 679 (9th Cir. 1981).

Once a prisoner-plaintiff has established a sincerely held religious belief, they must demonstrate that the challenged practice or policy (which allegedly infringes on that religious belief) is not reasonably related to penological interests in *Turner*. "The *Turner v. Safley* analysis aims to balance the constitutional rights of prisoners

[9] Superseded by statute on unrelated grounds as stated in *Small v. Lehman*, 98 F.3d 762, 765-766 62 (3d. Cir 1996); *cf. Marshall v. Corbett*, 2019 U.S. Dist. LEXIS 134520, 13-14 (M.D. Pa. Aug. 8, 2019) ("[T]he southern District of New York held that the claim was still governed by the reasonable relation standard under *Turner* because RFRA could not overrule the Supreme Court's interpretation of the First Amendment in *Turner.*"), citing *Gilmore-Bey v. Coughlin*, 929 F. Supp. 146, 151 (S.D.N.Y. 1996), quoting *Jolly v. Coughlin*, 76 F.3d 468, 475 (2d Cir. 1996) "the *O'Lone* 'reasonableness' test continues to have vitality for claims brought directly under the First Amendment--for the simple reason that a congressional enactment cannot modify the Supreme Court's constitutional interpretation", citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 350 (1987) (concluding that regulation burdening prison inmate's free exercise right need only be reasonably related to legitimate penological interests).

with the 'security, rehabilitation, and administrative concerns' [underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns]." *Abdullah*, 2024 U.S. Dist. LEXIS 55578 at 9-10, quoting *DeHart*, 227 F.3d at 51 (quotation extended from original).

While there is a balance to be struck between the legitimate necessities of prison administration and inmates' free exercise of religion, here, Plaintiff has not plausibly alleged that he holds *any* religious beliefs, much less that those beliefs are sincerely held. This is clearly insufficient as a matter of law. *Seeger*, 380 U.S. at 184-186.

Rather, Plaintiff's claims rely principally on the mere fact that the tablet computers at the Prison may be used to access religious services. *See*, *Abdullah*, 2024 U.S. Dist. LEXIS 55578 at 9. Plaintiff fails to aver his beliefs, the impact thereupon, and lack of relationship to a legitimate interest. *DeHart*, 227 F.3d at 51.[10] Plaintiff further fails to establish causal nexus with the Defendants, as he fails to aver why the electronic tablet was confiscated and who ordered the confiscation. This likewise fails as a matter of law for claims under §1983. *Rode,* 845 F.2d at 1207-1208. Accordingly, Plaintiff has failed to plausibly state a First Amendment free exercise claim.

[10] *Id.*, quoting *Turner*, 482 U.S. at 84-85, quoting *Procunier*, 416 U.S. at 405.

This case is exactly like *Abdullah*. Plaintiff has not established his religious belief at all, nor that it is sincerely held. Likewise, he does not address why the tablet was taken or exactly who ordered the removal and what bearing, if any, these claims have on Movant-Defendants – he claims only that Officer Rodriguez physically took the items. Plaintiff's allegations of a First Amendment free exercise violation are not viable under the allegations made in the Complaint.

Likewise, his claims to denial of access to mail is equally vague and not sufficiently described to state any constitutional, nor civil rights violation and it should be dismissed. Further, that matter is pending under the current grievance. *Lim v. Cruz*, 2015 U.S. Dist. LEXIS 30746 (M.D Pa. March, 13, 2015).

**5. <u>Movant-Defendants Cannot Be Held Liable for Actions of Officer Rodriguez</u>**

Plaintiff alleges that Officer Rodriguez, in response to unnamed persons who gave "orders" to him, turned off the lights for 15 days in an area of the Prison where Plaintiff and other inmates were located. This is insufficient to establish either wrongdoing on the part of Officer Rodriguez, or any theory of liability to implicate Movant-Defendants.

Plaintiff fails to aver the source of the averred orders. Officer Rodriguez is accused of following these vague orders to turn off the lights. Further, it is not specified how Plaintiff knows that Officer Rodriguez was able to physically turn off the lights or that Plaintiff saw Rodriguez turn off the lights. [Doc. 1, p. 13]. A mere

hypothesis that a defendant may have had knowledge, of or involvement in, a matter is not enough to have a coherent claim. *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003). *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). A plaintiff must establish the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354. *Respondeat superior* is a viable theory of liability for claims under §1983; personal involvement is required. *Id*; *Rode*, 845 F.2d at 1207-1208. The Plaintiff has failed to show requisite personal involvement by either Officer Rodriguez or Movant-Defendants.

### 6. **Each Movant Should be Dismissed Due to Lack of Personal Involvement**

Plaintiff fails to state a claim against Movant-Defendants. [Doc. 1, pgs. 5-17]. 28 U.S.C. §1915A (b)(1) provides that the Court must determine whether a *pro se* complaint by a prisoner "fails to state a claim upon which relief may be granted," adopting identical language to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This formulation of the standard applies to *pro se* complaints in the same terms. *Foster*, 2010 U.S. Dist. LEXIS 135427, at 11. Bearing this law in mind, this case is ripe for dismissal.

Plaintiff apparently named most of the Movants (exclusive of C.O. Rodriguez, and more tendentiously, Deputy Warden Pierre and Major Lucas) solely because of their positions and he fails to aver any factual allegations directly relating to them that demonstrate personal involvement in any matter that allegedly harmed Plaintiff.

[See generally, Doc. 1 and the fact summary above]. As to the Defendants included in the heading, none of them are alleged to have entered Plaintiff's cell at any time, to either take anything from Plaintiff or use force. [Doc. 1]. Their very limited contact with Plaintiff is explored in depth below.

There is no *respondeat superior* liability for management employees for the actions of others below them simply by virtue of the administrative superiority of the officers. *Rode*, 845 F.2d at 1207. As a matter of law, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in, nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *Rode, supra*, at 1208. In order to impose §1983 liability, the state actor must play an "affirmative part" in the alleged misconduct. *Evancho*, 423 F.3d at 353. A plaintiff must establish the particulars of conduct, time, place, and person responsible. *Id.,* at 354. A mere hypothesis that a defendant may have had knowledge of, or involvement in, a matter is not enough to have a coherent claim. *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003). Plaintiff fails to articulate any claims against the supervisory Defendants, and as such, they should be dismissed from the action with prejudice. *Id.*

**a. <u>Deputy Warden Pierre</u>**

Plaintiff claims that Deputy Warden Pierre "confirmed and assisted" with "Orders." [Doc. 1, p. 5-6]. Further, he "Initiated and Assisted" when a team of officers used force on Plaintiff after Plaintiff, in his words, "complied but did not get on my knees," after Plaintiff was specifically ordered to get on his knees. "I was told to face the back wall and get on my knees." [Id., p. 6]. Nowhere in the Complaint does Plaintiff show that Deputy Warden Pierre was present during any event of which Plaintiff claims he is aggrieved or that the Deputy Warden was personally involved. Similarly to the Warden, at no point is it shown how, by what mechanism, to whom, or when specifically, Deputy Warden Pierre gave these "Orders," conformed, assisted, or initiated any order or act that allegedly harmed Plaintiff. *See Rode, supra,* at 1208; *Evancho, supra,* at 353. Dismissal with prejudice is appropriate here. The Complaint does state that Pierre "came with the SERT team." However, in the context of the usage of the language as written, it appears to be slang for Pierre allegedly sending the SERT team. A Deputy Warden actually, physically entering a cell alongside a SERT team is so improbable as to lack all plausibility. *Twombly,* 550 U.S. at 570; *Iqbal*, 566 U.S. at 663-665. The claims against Deputy Warden Pierre must be dismissed accordingly.

**b. Major Lucas**

Major Lucas is also alleged to have "confirmed and assisted" with alleged rights violations as to the cell search and the lights out planks of the action. [*Id*., p. 8]. In neither case is there anything to suggest that Major Lucas physically entered the cell during the search or that he personally orchestrated the search in any way. Further, there is no factual support to show that Major Lucas turned the lights off, personally, in the area where Plaintiff was located or that he was the originator of the alleged "orders" that were implemented to do so. [*Id*.].

Again, he is only named because he "as our prison's Custody Major has a Duty to Confine as well as protect us." [*sic*.] [*Id*.]. For all the reasons set out above, Major Lucas should be dismissed from the action regarding claims related to the taking of property (and the alleged resulting civil rights violations) and for the light issue. *Rode, supra,* at 1207-1208; *Evancho, supra,* at 353.

The only remaining claims regarding Major Lucas relate to a possible allegation of excessive force and failure to intervene. However, even these claims are not clear as to the application of the supervisory standards set out under *Evancho* and *Rode*. Using the same type of language including "Initiated" and "Assisted" it is alleged that Major Lucas "came with SERT team" on December 8, 2023, and after refusing to comply with lawful orders, force was used by some unidentified parties against Plaintiff. These conclusory allegations are similar to those dismissed for

lack of factual basis under *Iqbal*, 556 U.S. at 664 (Defendant's allegations "that petitioners agreed to subject him to harsh conditions as a matter of policy, solely on account of discriminatory factors and for no legitimate penological interest; that [defendant] was that policy's 'principal architect'; and that Co-Defendant was 'instrumental' in its adoption and execution - are conclusory and not entitled to be assumed true.").

Major Lucas is not alleged to have personally used force. Rather, Plaintiff claims that he "Did Nothing to Stop the encounter or Deescalate the Situation." [*sic.*] [Doc. 1, p. 8]. It is very hard to discern, based on the prior and consistent use of language as to the other supervisory Defendants, whether Plaintiff is actually alleging the physical presence of Major Lucas, or his actions are used in a figurative sense regarding administrative and managerial "Initiation" and "Assistan[ce]" in the actions of the SERT Team. This is obviously a distinction with a difference. Deputy Warden Pierre and Major Lucas are not obligated to articulate Plaintiff's claims on his behalf; as such, a logical, contextual reading of the pleading indicates a supervisory role only as it relates to Major Lucas and the SERT Team. The "initiation" and "assistance" in Plaintiff's claims are akin to the "principal architect" and "instrumental" allegations dismissed in *Iqbal*. Such "threadbare recitals" of a claim without specific factual support cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 663-664.

The claims against Major Lucas should be dismissed with prejudice. Plaintiff recites the same language for Major Lucas as the other supervisory personnel, there is nothing to indicate the requisite level of personal involvement or causal nexus with Plaintiff's alleged injuries. *Rode,* 845 F.2d at 1208; *Evancho,* 423 F.3d at 352-353.

At a minimum, Plaintiff's seizure of property claim must be dismissed. A defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach under §1983. *Rode, supra,* at 1207-1208; *Martinez v. California*, 444 U.S. 277, 285 (1980). Here, the Complaint fails to show how any of the Defendants and Plaintiff's alleged injuries were actually connected by temporal proximity or otherwise.

**c. <u>Deputy Warden Ray</u>**

The same situation is present as to most of the other Defendants. Deputy Warden of Treatment Latonya Ray is accused of "refuse [sic] to acknowledge [Plaintiff's] grievance." He did not get a copy of grievances filed, and he does not prefer the speed with which grievances are dealt. [Doc. 1, p. 9]. She wronged him only because she runs the grievance process (along with an unidentified employee), according to Plaintiff. [Id., p. 9]. First, there is no Constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977), *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007). A prison

official that allegedly fails to properly process a grievance does not violate the Constitution. *Freeman v. Dept. of Corr.*, 477 App'x 385, 387 (3d Cir. 2011), *Wilson v. Horn*, 971 F. Supp. 942, 947 (E.D. Pa, 1997). There is no Constitutional right for an inmate to receive grievance forms. *Ashford v. Hawkinberry*, 2016 U.S. Dist. LEXIS 71921, at 19-20 (W.D. Pa., Jun. 2, 2016).[11] "[I]t is well established that inmates do not have a constitutionally protected right to a prison grievance system. Therefore, even if Defendants "denied Plaintiff the grievance process or obstructed the grievance procedure, [that], by itself, simply does not give rise to a cognizable interdependent claim." *Freeman*, 447 F. App'x at 387. So, Plaintiff had no actionable right to file a grievance, receive copies, or demand responses at a speed of his choosing. Deputy Warden Ray is sued not due to any personal action but simply because she is alleged to "run the Grievance Process." [Doc. 1, p. 9].

Further, there is no constitutional right to require prison officials to investigate an inmate's grievances. *Davage v. United States*, 1997 U.S. Dist. LEXIS 4844, at 9 (E.D. Pa. Apr. 11, 1997); *see also, Robinson v. Love*, 155 F.R.D. 535, 536 n.3 (E.D. Pa. 1994) (citing cases). The claim against Deputy Warden Ray should be dismissed with prejudice.

---

[11] Citing, *Rieco v. Scire*, 2014 U.S. Dist. LEXIS 148977, 2014 WL 5343221, at *4 (W.D. Pa. Oct. 20, 2014), citing *Heleva*, 214 F. App'x at 247; *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases); *Allen v. Warden of Dauphin Cnty. Jail*, 2008 U.S. Dist. LEXIS 74752, 2008 WL 4452662, at *5 (M.D.Pa. Sept. 29, 2008) (holding a prison official 's refusal to provide grievance forms or respond to an inmate's complaint does not constitute a violation of due process)).

**d. Deputy Warden Cuffaro**

The claims against Deputy Warden Jill Cuffaro are virtually identical to those against Deputy Warden Ray. Plaintiff also claims that Ms. Cuffaro also "run[s] the Grievance Process." [Doc. 1, p. 11]. A comparison of the two "counts" shows they are essentially the same. As such, the same arguments applicable to Deputy Warden Ray are incorporated herein on behalf of Deputy Warden Cuffaro, for the same reasons: there is no entitlement to a grievance procedure, no standalone action for failing to process a grievance, no right to have copies, and no right to demand a particular speed for processing based on a preference, all result in dismissal of the action. *See, Jones*, *Heleva*, *Freeman*, *Wilson* and *Ashford*, *supra*.

Further, Deputy Warden Cuffaro, again, is named only because she allegedly runs the grievance process in a managerial capacity. No proper facts that meet the elements required to continue any action against her. Her personal involvement in some harm to Plaintiff is not shown. *Evancho*, 423 F.3d at 353. Deputy Warden Cuffaro should be dismissed with prejudice.

**e. Warden Briggs**

The Warden allegedly gave the "commanding 'orders'" that led to the search of Plaintiff's cell. Part of the removal of property from the cell included the tablet assigned to Plaintiff which also allegedly resulted in a myriad of Constitutional violations. The Warden also allegedly ordered that the lights be turned off in the

area where Plaintiff and others were located. [Doc. 1, p.15]. These issues arose from the period between November 16 through December 20, 2023. [Id.]. At no point is it shown how, by what mechanism, to whom, or when specifically, Warden Briggs gave these "orders." On the face of the Complaint, the standards required to show personal involvement of Warden Briggs in the matters alleged, fail to be met. *Rode,* 845 F.2d at 1208; *Evancho,* 423 F.3d at 352-353. The claims against the Warden should be dismissed with prejudice.

**7. <u>Each Movant Should Be Dismissed From the Excessive Force Claims and Failure to Intervene for Lack of Personal Involvement</u>**

Based on the accusations made in the Complaint, Plaintiff has failed to plausibly plead that Movant-Defendants had personal involvement with the SERT team entry into the cell and the force used thereafter. These claims should be dismissed. *Rode, supra,* at 1207-1208; *Evancho, supra,* at 353.

**8. <u>Each Movant Should be Dismissed as To Excessive Force and Failure to Intervene on the Merits</u>**

No Defendant except Major Lucas and possibly Deputy Warden Pierre, could even remotely, be alleged to have been anywhere in the vicinity of Plaintiff's cell when the SERT team entered and used force. To find that even Major Lucas or Deputy Warden Pierre were present requires a tortured and implausible interpretation of Plaintiff's averment that Lucas and Pierre "came with" the SERT team. There is no reference to their physical presence in the cell, or any personal

acts after the SERT team entered, further supporting the interpretation as a figurative reference to their leadership rather than a literal description of physical entry.

Assuming *arguendo,* that Lucas and Pierre actually entered the cell on December 8, 2023, it is clear that on the face of the Complaint Plaintiff refused to comply with a lawful order when he was told to face the wall of his cell and kneel down. He notes that after "10 minutes of complaining and seeking answers, I was told to face the back of the wall and get on my knees. All while Plaintiff was still handcuffed with a belt around him, from coming back from Medical. I complied, going to the wall but did not get on my knees." [Doc. 1, p. 8]. It was **only after the non-compliance that an officer opened Plaintiff's cell door and the SERT team entered**. (emphasis supplied by author). [Id.]. On the face of the Complaint, it is clear that the force used was reasonable under the *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

As "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,…" (*Bell,* 441 U.S. at 559) the analysis for an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically, for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In making this determination, a court evaluates a number of factors: "(1) the need for the application of force; (2) the relationship

between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles,* 571 F.3d at 326*,* citing *Whitley*, 475 U.S. at 321; *see also, Brooks v. Kyler*, 204 F.3d 102 (3d Cir. 2000).

The case at bar resembles the facts of *Jackson v. Beard*, 2016 U.S. Dist. LEXIS 86807 (M.D. Pa., July 5, 2016) (granting summary judgment for correctional defendants). In *Jackson* the court applied the five *Giles* factors to grant summary judgment for the prison defendants. First, the inmate [was] given a lawful order to stand down. He refused the order and barricaded himself in his cell with a mattress. He was given a chance to comply with the lawful order. He refused. *Jackson*, 2016 U.S. Dist. LEXIS 86807 at 11.

Second, the relationship between the need and the amount of force used was appropriate. Officers entered to extract him from his cell, first using OC spray and then physical force. *Id*. at 11-12, citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (4th Cir. 1984) ("The use of mace, tear gas or other chemical agents of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed).

Third, the extent of the injury inflicted was not excessive. Serious injury is not required for excessive force *per se*, but it is a factor in the overall analysis and its absence augurs against a finding that force was excessive. The inmate experienced some injuries, including bruising to his ribs, but he received prompt care thereafter. *Jackson*, *supra*, at 12-13. De minimis uses of physical force do not qualify as excessive force unless the force is "repugnant to the conscience of mankind." *Id*., at 9, quoting *Brooks*, 204 F.3d at 107, citing *Hudson*, 503 U.S. at 6. [12]

Fourth, the court found that the officers had a reasonable belief in a threat to their safety and to institutional security because of the inmate's refusal to obey the direct order. *Jackson*, *supra* at 14; *Giles*, 571 F.3d at 326.

Under the fifth and final *Giles* element, the Court found that the officers tried to get the inmate to comply without force. He refused a lawful order, refused to be handcuffed, and was gradually subjected to increasing force, first by OC spray, and then by physical restraint. The OC Spray was ineffective and harsher measures were required. The use of force was therefore measured. *Jackson*, *supra*, at 14-15.

The *Giles* factors also favor dismissal of Major Lucas as a Defendant – assuming *arguendo* that he was even in the cell. Plaintiff fails to state who touched him or when. General, collective allegations are insufficient, a plaintiff must

[12] See generally *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (clarifying that de minimis force is the dispositive issue, not de minimis injury).

establish the personal involvement of each defendant. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018). Plaintiff admits he refused to kneel when ordered to do so. The SERT team, he concedes, only came in after he refused to kneel. The team first sprayed him, then physically restrained him when he continued to resist. A nurse provided prompt medical treatment thereafter. [Doc. 1, p. 6]. *See, Jackson*, 2016 U.S. Dist. LEXIS 86807 at 11-15.

No Moving Defendant is accused of having touched Plaintiff. Major Lucas and Deputy Warden Pierre are the only Defendants that Plaintiff even vaguely suggests may have been in the vicinity, and that accusation is so indeterminate and conclusory as to be accorded no weight under Rule 12(b)(6). Plaintiff never alleges that they actually entered the cell they just "came with" the SERT team. [Doc. 1, p. 8]. It is highly unlikely in the extreme that any managerial employee at the Deputy Warden level or even a Major (a senior-ranked officer) would ever be physically present in such a situation, let alone enter a cell with an extraction team. The Court may take judicial notice of such public information, including publicly available records and transcripts from other judicial proceedings. *Golson v. Harold*, 2017 U.S. Dist. LEXIS 134184 (M.D. Pa. Aug. 22, 2017).

Nevertheless, even without the ability to provide a video at the Motion to Dismiss stage, the Plaintiff's vague averments of Lucas and Pierre's connection to

the SERT team are insufficient as a matter of law.[13] Taking strictly those plausibly pleaded facts as true, Plaintiff's Complaint fails to state a claim on which relief may be granted.

Finally, there is no failure to intervene claim where there is no underlying constitutional violation in that the use of force by the SERT team was wholly reasonable and none of the parties sued appears to even have been at the cell at the time of the event. The claims against these Defendants should be dismissed. The law is clear that where a claim of unconstitutional behavior of a correctional officer is insufficient, then a claim for failure to intervene by another officer necessarily fails. *Rosario v. Strawn*, 2020 U.S. Dist. LEXIS 135559 (W.D., Pa. July 29, 2020). No one, especially Major Lucas or Deputy Warden Pierre, was required to intervene because nothing improper occurred.

**9. <u>Each Movant Enjoys Qualified Immunity and Is Immune From Official Capacity Claims</u>**

Plaintiff claims he is suing each of the named Defendants **both** in their official and personal capacities. In their individual capacities, each Defendant enjoys qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[13] Defendants reserve the right to present dispositive exculpatory video evidence at the procedurally appropriate time, should Plaintiff's claims not be dismissed at this stage.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Grimes v. Yoos,* 298 F. App'x 916, 922 (11th Cir. 2008), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016). Law enforcement is a discretionary function. A civil litigant lacks standing to seek law enforcement action. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, (1973).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986).[14]

Officials are immune if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider "the state of the existing law at the time of the alleged violation and the [specific] circumstances confronting the officer." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir.

[14] *See*, *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005). ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.").

2010). Movant-Defendants are entitled to be dismissed under their qualified immunity.

If Plaintiff *pro se* is suing Movants-Defendants in their official capacities, they are immune from suit when sued in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Giandonato v. Montgomery County*, 1998 U.S. Dist. LEXIS 8038, 1998 WL 314694, at 5 n.2 (E.D. Pa. May 22, 1998).

**10. <u>No Deliberate Indifference to Plaintiff's Medical Needs</u>**

To state an Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Deliberate indifference to serious medical needs may be manifested by guards intentionally denying or delaying access to care. *Id* at 104-05. The "serious medical need" element is an objective factor. A need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would note the need for medical attention. *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006, 100 L. Ed. 2d 195 (1988). The "deliberate indifference" element is a subjective factor, where it must be shown that each defendant disregarded a known or obvious consequence of his action. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

"Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll,* 991 F.2d 64, 67 (citations omitted). *Clark v. Doe*, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). In this case, Plaintiff does not provide any facts that support his claims of deliberate indifference. To the contrary, he admits he received medical treatment for his alleged injuries, and he received some follow-up treatment. Specifically, post the SERT Team incident, Plaintiff states that a nurse put "Nasaline" in his eyes. (Doc. 1, p. 6). Plaintiff does not allege Movant-Defendants made any decisions as to his medical care or that they were personally involved therewith. *Id*.

Plaintiff acknowledges he received medical treatment immediately after the incident. *Id*. Plaintiff's blanket statement that the Movants acted with deliberate indifference is an unsupported legal conclusion belied by Plaintiff's own averred facts (*id*.), as well as a *respondeat superior* or vicarious liability claim that must be dismissed under *Evancho*, 423 F.3d at 353.

Plaintiff's Complaint itself shows there was immediate healthcare after the use of force. *United States ex rel. Walker v. Fayette Cnty*., 599 F.2d 573, 575 n.2 ("Where a prisoner has received some medical attention…federal courts are generally reluctant to second guess medical judgments and constitutionalize claims

which sound in state tort law."), (3d Cir. 1979).[15] It is sufficient that care was provided; correctional authorities like Movant-Defendants are not responsible for the sufficiency of care. *Fear v. Pennsylvania*, 413 F.2d 88 (3d Cir. 1969).[16] Corrections Officials may rely on determinations made by medical professionals regarding care. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). As such, the movants are not liable to Plaintiff under the facts alleged for deliberate indifference to medical need. These claims must be dismissed.

**11. <u>Amendment Futility</u>**

Although the Court will generally allow leave to amend once as a matter of course, here, such amendment would be futile and must be denied. Plaintiff has failed to exhaust administrative remedies prior to filing this suit, and further, has asserted claims directly contradicted by his own averred facts. No further amendment should be allowed. *Phillips v. Cnty of Allegheny*, 515 F3d 224, 245 (3d Cir. 2008). "[L]eave to amend should not be granted when amendment would be futile." *Culpepper-Smith v. United States*, 1998 U.S. Dist. LEXIS 13220, 23, (E.D.

---

[15] *Id.,* at 575 n.2, quoting *Westlake v. Lucas*, 537 F.2d 857, 869 n.5 (6th Cir. 1976).

[16] *Id.,* at 88 ("The action against the warden amounted to nothing more than a claim of improper medical care. This Court has held that such an allegation is legally insufficient to establish a denial of rights secured under the federal constitution or laws"), *cert*. denied 396 U.S. 935, citing *Pennsylvania ex rel. Gatewood v. Henrick*, 368 F.2d 179 (3d Cir. 1966), *cert*. denied 986 U.S. 925 (1967); *United States ex rel. Ingram v. Montgomery County Prison Bd*., 369 F. Supp 873, 874 (E.D. Pa. 1974) ("The mere claim of lack of proper medical attention, in and of itself, does not come within the above Civil Rights Statute [42 U.S.C. §1983]."), citing *Gittelmacker v. Prasse*, 428 F.2d 1 (3d Cir. 1970); *Stilter v. Rhay*, 371 F.2d 420 (9th Cir. 1967); *cert*. denied 386 U.S. 1025.

Pa. Aug. 24, 1998), citing *Foman v. Davis*, 371 U.S. 178, 183, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); ("An amendment is futile if it . . . could not withstand a motion to dismiss.") 3 James W. Moore, Moore's Federal Practice § 15.15[3] (3d ed. 1998)).

Plaintiff's Complaint warrants dismissal with prejudice.

## VI. CONCLUSION

Based on the facts and law cited herein, Moving Defendants request that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

**Lavery Law**

By: */s/ Murray J. Weed*
Murray J. Weed, Esquire
Atty No. 329717
Frank J. Lavery, Jr., Esquire
Atty No. 42370
225 Market Street, Suite 304
Harrisburg, PA 17108-1245
mweed@laverylaw.com
flavery@laverylaw.com
*Attorneys for Defendants Pierre, Lucas, Ray, Cuffaro and Briggs*

DATE: July 8, 2024

**CERTIFICATION PURSUANT TO MIDDLE DISTRICT LOCAL RULE 7.8(b)(3)**

The undersigned counsel hereby certifies that the foregoing Brief complies with the Court's Order of June 11, 2024 granting leave pursuant to Local Rule 7.8(b)(3) to file a Brief in Support that does not exceed 9,500 words. (DOC. 23). This Brief is 9319 words. Counsel relied upon the word count feature of the word processing system used to prepare the brief in obtaining the foregoing number.

DATE: July 8, 2024

*/s/ Murray J. Weed*
Murray J. Weed, Esquire
Attorney No. PA329717

# CERTIFICATE OF SERVICE

I, Michelle Principato, an employee with the law firm of Lavery Law, do hereby certify that on this day, I served a true and correct copy of the foregoing filing via this Court's ECF System and U.S. Mail to:

Kani C. Little, 087290
Franklin County Jail
LEGAL MAIL-OPEN ONLY
IN PRESENCE OF INMATE
1804 Opportunity Avenue
Chambersburg, PA 17201

Dated: July 8, 2024

*/s/ Michelle Principato*
Michelle Principato
Legal Assistant