| | | |
|---|---|---|
| **KANI C. LITTLE** | ) | **IN THE UNITED STATES DISTRICT COURT** |
| **v.** | ) | **FOR THE MIDDLE DISTRICT OF PENNSYLVANIA** |
| **PIERRE, Et. Al** | ) | |
| | ) | **CIVIL ACTION NO.** 1:24-CV-0380 |

FILED
HARRISBURG, PA
AUG 06 2024
PER ___ DEPUTY CLERK

**AND NOW, comes the Plaintiff Kani C. Little, pursuant to <u>M.D.PA.L.R.56.1,</u> files an appropriate response to Defendants Motion to Dismiss Plaintiffs Complaint and avers the following information recorded:**

**1.** Plaintiff is a Pre-trial Detainee, Incarcerated at the Franklin County Jail, transferred from the Daupin County Prison where the place of suit is alleged and has filed suit by way of complaint **1983.**

**2.** Defendants have filed a timely, lengthy, and incompetent Brief in support of Defendants Motion to Dismiss Plaintiffs complaint.

**3.** Defendants Motion is an attempt to misguide the Honorable Judge and Cover-up the actions alleged by citing statements and case law memorandum, that do not support the basis of the case at issue.

**4.**Therefore, Plaintiff files an appropriate response to Defendants Motion.

# <u>No Immunity From Suit</u>

**1.** All defendants have an Official title, employed at the Dauphin County Prison, excluding Defendant Rodriguez (correctional officer), and ALL Defendants have displayed an "Affirmative Role" in each and every allegation, alleged.

**2.** Defendants are not immune from suit when their conduct clearly establish statutory and constitutional violations. **<u>42 U.S.C. § 1983</u>**.

**3.** The Defendants could not have been unaware of the actions alleged, due to either being present during the violations or giving the "commanding orders" to execute the alleged violations.

**4.** Section **1983** imposes civil liability upon any person who, acting under the color of law, deprives another individual of any rights, privileges, or immunities, secured by the constitution or laws of the United States. See, **Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir.2005).**

**5.** A Plaintiff must allege that each Defendant was personally involved in the act or acts that he claims violated his federally protected rights. See, **Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).**

**6.** A Plaintiff makes sufficient allegations of a defendants personal involvement by describing the defendants participation in or actual knowledge of and acquiescence in the wrongful conduct. See, **Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3dCir.2015).**

**7.** The presence and the willingness to commit and establish unlawful orders and acts, demonstrate personal involvement and the actual knowledge of the conduct, therefore holds defendants liable and not immune from suit.

# No Fail to State Claim

**1.** Defendants motion wishes to Dismiss Plaintiffs complaint for failure to state a claim pursuant to **Fed.R.Civ.P.12(b)(6).**

**2.** Under **Rule 12(b)(6),** the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief".**Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009)** quoting, **Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir.2008).** While a complaint need only contain "a short and plain statement of the claim" **Fed.r.Civ.P.8(a)(2)**, and detailed factual allegations are not required, **Bell Atlantic Corp., v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 167 L. Ed. 2d 929 (2007),** a complaint must plead "enough facts to state a claim to relief that is plausible on its face"."The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully".**Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)** quoting, **Twombly, 550 U.S.** at **556.**

**3.** A Plaintiff, in order to state a an actionable civil rights claim, must plead two essential

elements: **(1)** that the conduct complained of was committed by the defendant acting under color of law, and **(2)** that said conduct deprived the plaintiff of a right, privelege, or immunity secured by the constitution or laws of the United States. See, **Groman v. Township of Manalapan, 47 F.3d 628, 638(3d Cir.1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).**

**4.** Plaintiff contends that the complaint stated the conduct complained of was committed by (ALL) the referenced Defendants acting under the color of law and that the conduct deprived Plaintiff of the rights, priveleges, or immunities secured by the constitution or laws of the United States. **(see and below referenced paragraphs).**

# Exhaustion of Administrative Remedies: Defendants Latonya Ray & Jill Cuffaro

## 14th Amendment- Due Process Claim:

**1.** Defendants motion claims Plaintiff has failed to Exhaust his administrative remedies before filing suit as incorporated in **42 U.S.C.§1997e(a).**

**2.** Plaintiff did file an initial grievance in November of 2023, and after several weeks of an unanswered response, Plaintiff filed an additional grievance inquiring about his initial grievance citing the same issues as the initial grievance, still to no avail.

**3.** Ultimately, 5 Months passed by before the initial grievance was responded to in March of 2024, and ONLY after plaintiff was transferred from Dauphin County Prison to Franklin County Jail, where he received that response.

**4.** It is well-stated in **Harrell v. Mayer, 2023 U.S. Dist Lexis 176725,** that a broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused an inmates procedural default on a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. See also, **Camp v. Brennan, 219 F.3d 279 (3d Cir.2000).**

**5.** Case law recognizes a "clear reluctance to invoke equitable reasons to exclude an inmates failure to exhaust as the statute requires". **Davis v. Warman, 49 F. App'x 365,**

**368 (3d Cir.2000).** Thus an inmate's failure to exhaust will only be excused "under certain limited circumstances". **Harris v. Armstrong, 149 F. App'x 58,59 (3d Cir.2005),** and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statute mandate". **Warman, 49 F. App'x at 368.**

**6.** In **Robinson v. Superintendant, 831 F.3d 148, 153-154 (3d Cir.2016),** the third circuit similarly held that the exhaustion requirment is satisfied where prison officials fail to "timely" respond to an inmates properly filed grievance. See, **Harrell, 2023 U.S. Dist Lexis 176725.** See also, **Martin v. Gearhart, 712 F. App'x 179, 183-84 (3d Cir.2017).**

**7.** In **Shifflett v. Korsniak, 934 F.3d 356, 365 (3d Cir.2019),** the United States Court of Appeals for the third circuit held that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies "unavailable" and the prisoner has fully discharged the PLRA's Exhaustion requirement".

**8.** The case of **(Harrell)** and that of Plaintiffs Case, are similar in its Exhaustion Protocols. In **(Harrell),** the plaintiff filed his initial grievance, inquired about his grievance and missing any indication that the plainiffs grievance was responded to, and that the response was 'timely'. Thus, defendants failed to meet their burden of proof to demonstrate that plaintiff received a 'timely' response to his grievance and that the plaintiff failed to exhaust his administrative remedies.

**9.** In the instant case, after filing an initial grievance and also submitting an additional grievance inquiring about the initial grievance, henceforth, after 5 months and a transfer from the prison when the response was given, demonstrates Ray and Cuffaro, who's official title coordinates the grievance process, failed to respond in a timely manner and Plaintiffs administrative remedies were rendered 'unavailable', thus filing suit.

**10.** Plaintiff contends Defendant Latonya Ray, who's official title coordinates the grievance process is personally involved by having knowledge to deliberately ignore any response to his grievance, that diminished his ability to Exhaust his administrative remedies, Accordingly.

**11.** Plaintiff also contends Defendant Jill Cuffaro, who's official title also coordinates the grievance process is personally involved by having knowledge to deliberately ignore any

response to his grievance, that diminished his ability to exhaust his administrative remedies, accordingly.

**12.** Therefore, Plaintiff claims a **14th Amendment, Due Process** violation for the actions that deprived Plaintiff from Exhausting his Administrative Remedies by Defendants Ray and Cuffaro, which could have resulted in further injury, if not for the necessary action of filing suit.

# Defendants: Lionel Pierre and Roger Lucas - 8th & 14th Amendment Claim

## 8th Amendment- Cruel and Unusual Punishment Claim:

**1.** Plaintiff alleges an **8th Amendment** Claim, as suffered from **cruel and unususal punishment,** by being assaulted with **excessive force,** that also arises under the **Due Process Clause** of the **14th Amendment.**

**2.** Plaintiff alleges Deputy Warden (Pierre) and Custody Major (Lucas), were present and assisted with the C.E.R.T. Team, to extract Plaintiff from off of the (P-6) housing unit, where he was first assaulted, and led to (P-3) housing unit, where he continued to be assaulted, up until he was led to (Seg). **(see Complaint)**

**3.** Plaintiff avers to refusing to kneel when told to, but complied with the order to go to the back wall and every other order given henceforth.

**4.** Plaintiff states he was 'handcuffed', before the extraction (after returning from medical), during the extraction, and after the extraction up until he was led unto (Seg) housing unit.

**5.** Plaintiff contends, the entire action was unlawfully cruel due to being 'handcuffed', before any, O.C. spray was applied, punches and kicks which led to the Plaintiff to be knocked unconcious for a brief amount of time before eventually recollecting his stable mind-frame.

**6.** Once taken, to the (P-3) Housing unit, officers told Plaintiff to 'strip' and not more than 3 seconds passsed, before being continually sprayed with O.C, punched and kicked

multiple times in the head before being led away in the movable chair.

**7.** Plaintiff contends that by him being handcuffed before the encounter, during the encounter and even after, outnumbered, and put into an unstable condition that it diminished any ability of him posing a threat to himself or to any officers.

**8.** Plaintiff avers that Deputy Warden (Pierre) and Custody Major (Lucas) did "assist"- **(**to aid; help, and act of giving aid**)** and were present during the encounter and believes, that because of their official title, these Defendants could have prevented him from harm.

**9.** As it is stated under the **8th Amendment,** prison officials have an affirmative duty to protect prisoners from violence. And though, the **8th Amendment** specifically states protection from the hands of other prisoners however, "not every injury suffered by one prisoner at the hands of another, translates into constitutional liability. Instead a prison official violates an **8th Amendment** right against cruel and unusual punishment "based on a failure to prevent harm" to the inmate only under two circumstances: "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety". See, **Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)** quoting, **Cortes-Quinones v. Jimenes-Nettleship, 842 F.2d 556, 558 (1st Cir.1988)** See also, **Lakin v. Barnhart, 758 F.3d 66, 2014 U.S. App. Lexis 12756; Hudson v. McMillian, 503 U.S. 1.**

**10.** Therefore, Plaintiff states that Deputy Warden (Pierre)'s presence and assistance of the assault, demonstrates as a prison official who 'failed to prevent harm', has met both prongs that constitute a violation of the **8th Amendment** and has failed to act with deliberate indifference to Plaintiffs health and safety.

**11.** And as above, Plaintiff also states that Custody Major (Lucas)'s presence and assistance of the assault, demonstrates as a prison official who 'failed to prevent harm', has met both prongs that constitute a violation of the **8th Amendment** and has failed to act with deliberate indifference to Plaintiffs health and safety.

## 14th Amendment- Excessive Force Claim:

**1.** Plaintiff also alleges that the assault gives rise to a **14th Amendment, Excessive Force**

Claim.

**2.** The **Due Process Clause** incorporated in the **14th Amendment,** protects a pre-trial detainee from the use of excessive force that amounts to punishment. See, **Kingsley v. Hendrickson, 576 U.S. 389, 397 S.Ct. 2466, 192 L. Ed. 2d 416 (2015).**

**3.** A pre-trial detainee must show only that the force purposely orknowingly used against him was 'objectively unreasonable'. See, **Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir.2021)** quoting, **Kingsley, 576 U.S.** at **396-97.**

**4.** Courts are to assess a variety of factors when determining whether an officer used "objectively unreasonable force":

> -the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whther the plaintiff was actively resisting.

**5.** In **Harrell v. Mayer, 2023 U.S. Dist Lexis 176725,** the court concluded that that the complaint alleged facts sufficient to state a **14th Amendment, Excessive Force** Claim and that the force used against plaintiff was objectively unreasonable. See, **Jacobs, 8 F.4th at 194.**

**6.** In the case of (Harrell),the plaintiff refused to go to the top bed and in turn the defendant (Mayer), applied O.C. Spray and assaulted Harrell while he was 'handcuffed'.

**7.** In the instant case Plaintiff avers as to refusing to kneel, solely due to being 'handcuffed', but complied by going to the back wall as officers ordered. And to be repeatedly sprayed, punched and kicked until Plaintiff were unconcious, demonstrates force that was applied objectively unreasonably.

**8.** Plaintiff states Defendant (Pierre)'s presence and assistance in the encounter holds the Defendant responsible for the actions that resulted in plaintiff having to endure wanton infliction of pain, committed by officers who applied force excessively.

**9.** Plaintiff also states Defendant (Lucas)'s presence and assistance in the encounter holds the Defendant responsible for the actions that resulted in plaintiff having to

endure wanton infliction of pain, committed by officers who applied force excessively.

**10.** For all of the above reasons, Plaintiff contends that Deputy Warden (Pierre)'s, and Custody Major (Lucas)'s presence and assistance in the encounter violated the **8th & 14th Amendment** afforded to him by the United States Constitution.

## Defendants: Gregory Briggs, Lionel Pierre, Roger Lucas, and Luis Rodriguez - Cell Search Confiscation & Deactivation of Lights

**1.** Plaintiff contends that Defendants referenced above were apart of the cell search confiscation and the deactivation of lights and were directly involved by committing the action itself or commanding the "order" to instruct the action to be executed.

**2.** Plaintiff avers that the order to confiscate the items was based upon the assumption that smoking occurs within the prison.

**3.** Plaintiff also avers that the deprivation of basic essential necessities, had no basis for the confiscation, the items deprived have nothing whatsoever, to do with any smoking that permeates throughout the entire prison.

**4.** Plaintiff also avers that ultimately, NO contrabnd were found during the confiscation.

**5.** Plaintiff states that Defendant (Briggs), established and instructed by giving 'commanding orders', to search, and confiscate all items referenced **(below)** and in **(complaint),** and to deactivate all lighting from within the cells for a number of weeks.

**6.** Plaintiff also states that Defendant (Pierre), instructed and confirmed the order to execute the search and confiscation, and to deactivate all lighting from within the cells for a number of weeks.

**7.** Plaintiff contends Defendant (Lucas), instructed and confirmed the order to execute the search and confiscation, and to deactivate all lighting from within the cells for a number of weeks.

**8.** And Lastly, Plaintiff contends Defendant ( Rodriguez), coordinated the search and

executed the order along with other officers that confiscated all items referenced.

**9.** Plaintiff avers by the confiscation of his Clothes, Sheets & Bedding, Personal Hygeine, Toiletry's, Legal Documents, Tablet, and the order to Deactivate all lights from within the cells, deprived plaintiff of basic essential needs and the minimal civilized life's necessities, and claims **1st,** and **8th Amendment,** violations. See, **Farmer v. Brennan, 511 U.S. 825.**

## 1st Amendment- Free Exercise of Religion Claim:

**1.** Plaintiff contends that the confiscation of his tablet, deprived the plaintiff of his access to religion services and material, due to not having any paper back books or material in the prison, all books and religious material are accessed on the tablet system. So he as well as other inmates are not afforded the right to access a paper back bible.

**2.** "Inmates clearly retain protections afforded by the **1st Amendment,** including its directive that no law shall prohibit the free exercise of religion". See, **O'lone v. Shabazz, 482 U.S. 342, 348 (1997).**

**3.** In order for the **1st Amendment's Free Exercise Clause,** to be implemented, two threshold requirements must first be met. First, the belief must be sincerely held, and second, it must be religious in nature. See, **Dehart v. Horn, 227 F.3d 47, 51 (3d Cir.2000).**

**4.** To establish a free exercise claim, plaintiff must show that defendants "burdened the practice of religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penelogical interests" See, **Heleva v. Kramer, 330 F. App'x 406, 408 (3d Cir.2009)** quoting, **Turner v. safely, 482 U.S. at 89**

**5.** In **(Turner),** the court assessed the overall reasonableness of such regulations by weighing four factors. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it", and this connection must be "so remote as to render the policy arbitrary or irrational". Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the cost that accomodating the right would impose on other inmates, guards, and prison resources

generally. And Fourth, a court must consider whether there are alternatives to the regulation that "fully accomodate the prisoners rights at de minimis cost to valid penelogical interest".

**6.** Plaintiff contends that he is a Devoted Christian and has classified himself as Christian in the prisons religious classification due at intake. And practices his belief daily, by praying and reading scripture as the faith requires.

**7.** Plaintiff states that he could not keep up his faith by reading scripture, due to no paper back bibles and the confiscation of his tablet for multiple months.

**8.** Plaintiff also states that with the tablet the Defendants would not have had to take any extraordinary measures to accomodate's Plaintiffs desire to worship.

**9.** Plaintiff contends that there is no other way that he could practice his religion, even at a de minimis cost to valid penelogical interest, without scripture and adequate bible study that the Christian faith requires.

**10.** Therefore, Plaintiff asserts that Defendants referenced above violated his **1st Amendment, Free Exercise of Religion**, afforded to him by the United States Constitution.

## <u>1st Amendment- Free Access to Courts and U.S.P.S Mail System:</u>

### U.S.P.S Mail System-

**1.** Plaintiff contends by the confiscation of his tablet the defendants deprived him of his right to utilize the U.S.P.S. Mail System, as incorporated in the **1st Amendment,** as all mail (excluding legal) is accessed through the tablet system.

**2.** Plaintiff states that if he were not deprived of his right to utilize the Mail System, he would have been aware of his grandmother's illness that caused her death.

**3.** Though Plaintiff is incarcerated, he suffered from her loss and feels that he could have been prepared, mentally if not emotionally, if it were not for the deprivation of the U.S. Mail System, due to the confiscation of the tablet, which in turn caused the Plaintiff emotional and mental distress.

**4.** As it is well stated in the **1st Amendment,** Inmates are afforded the right to access

the court and also the right to utilize the U.S.P.S Mail System. See,

## Free Access to Courts-

**1.** Plaintiff states that the confiscation of his Legal Documents and his tablet, Defendants deprived him of his **1st Amendment, Free Access to Courts.**

**2.** Plaintiff contends his Legal Documents were vital to his criminal case and pivital as the resources needed to adequately research and prepare an defense, in his criminal case.

**3.** Plaintiff also states that the confiscation of his tablet, prevented him from utilizing the law library, and adequately research case law and material needed to file his (Franks) brief memorandum, in his active criminal case.

**4.** Plaintiff avers that no deadline was set for the brief to be filed, but the fact that he had to wait 7 months before he could file his brief memorandum only after acquiring a tablet at the Franklin County Jail, prolonged his incarceration that could have been shortened per the dismissal of the franks hearing, which still has not commenced.

**5.** In **James v. Wetzel, 2024 U.S. Dist Lexis 57285,** the plaintiff asserts a **1st Amendment- Retaliatory** claim, in which the court concluded that he failed to properly state a **1st Amendment- Retaliatory** claim. The court also acknowledged that by the search of his cell and confiscation of his legal documentation and etc.., the court held that the plaintiffs complaint sufficiently stated adverse actions for purposes of his prima facie case. And Certainly, each of those actions could deter an inmate of ordinary firmness from his exercising his constitutional rights.

**6.** For all of the above reasons, the Plaintiff contends that the confiscation of his tablet deprived the plaintiff of his right to utilize the U.S.P.S. Mail System, which caused injury to his emotional and mental state due to the loss of his grandmother, which could have been prevented by being prepared for the loss, if not for the deprivation.

**7.** Plaintiff also contends that the confiscation of his tablet and the confiscation and shredding of his Legal Documentation deprived the plaintiff of his right to free access to courts by not being able to utilize the law library and not having the material needed to file his brief memorandum for his criminal case and the deprivation diminished his ability to fight his case adequately which in turn, caused him to suffer in the confines of

jail causing injury, by prolonging incarceration.

**8.** Plaintiff claims a **1st Amendment** violation, as to the deprivation of the U.S.P.S Mail System, and the Deprivation of his right to free access to courts.

## 8th Amendment- Cruel and Unusual Punishment:

**1.** Plaintiff cites an **8th Amendment, Cruel and Unusual Punishment** claim, due to the confiscation of his Clothes, Sheets & Bedding, Personal Hygeine, Toiletry's, Legal Documents, Tablet, and the order to Deactivate ALL lights from within the cells for multiple weeks, and the confiscation of the items referenced resulted in the denial of the minimal civilized measure of life's necessities. See, **Farmer v. Brennan, 511 U.S. 825.**

**2.** In its prohibition of cruel and unusual punishments, the **8th Amendment: (1)** places restraints on prison officials, who may not use excessive physical force against prisoners **Hudson v. Mcmillian, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992)** and **(2)** imposes duties on prison officials, who mus provide humane conditions of confinement by insuring that inmates receive adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the safety. Quoting, **Helling v. McKinney, 509 U.S. 25.** See also, **Farmer v. Brennan, 511 U.S. 825; Rodriguez v. Thomas, 299 F. Supp. 3d 618, 2018 U.S. Dist Lexis 35789.**

**3.** The cruel and unusual punishment clause of the Federal constitution's **8th Amendment,** states **(1)** the deprivation alleged must be objectively, sufficiently serious **Wilson v. Seiter, 501 U.S. 294,** that is, the officials act or omission must result in the denial of the minimal civilized measure of life's necessities **Rhodes v. Chapman, 452 U.S. 337,** and for claims based on failure to prevent harm, prisoners must show that they are incarcerated under conditions posing a substantial risk to serious harm, **Helling, supra** at **35,** and **(2)** since the unnecessary and wanton infliction of pain implicates the **8th Amendment**, the official must have a sufficient culpable state of mind, consisting of deliberate indifference to prisoner health and safety. **Wilson, Supra, 501 U.S.** at **302-303.**

**4.** With Deliberate Indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Court of Appeals have routinely equated deliberate indifference with recklessness. See, **LaMarca v. Turner, 995 F.2d 1526, 1535.** In this the court has noted that it is fair to say that acting or failing to act

with deliberate indifference to a substantial risk to serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

**5.** Plaintiff states by the confiscation of his clothes, he was subjected to freezing conditions due to the winter season and the ventilation not bearing any heat, and he could not apply any type of warmth to his bare body for an excess amount of days.

**6.** Furthermore, Plaintiff staes that the confiscation of his sheets and bedding he was subjected to sleep on an old worn down bare mat, which realistically is the equivalent to sleeping on a bare bunk or even a bare floor.

**7.** Continually, Plaintiff states that he could not shower for an excess amount of days due to being deprived of coming out his cell for the required hour, and even if he wanted to wash in the sink in his cell, he could not, because of the confiscation of his personal hygeine.

**8.** Plaintiff was forced to remain unclean in his cell for an excess amount of days, without a shower and forced to remain unclean due to officers confiscating toiletry's from within the cells and depriving him of toiletry's even after the confiscation for an excess amount of days while he performed to defecate.

**9.** Plaintiff lastly states the the deactivation of lights forced him to consume hair and insects that lie in the food continously at the Dauphin County Prison, and had to take his medication in darkness, while also having to urinate and defecate in utter darkness.

**10.** Plaintiff contends by the 'order' to confiscate all the items referenced (above) and the deactivation of lights from within the cells, the defendants subjected him to inhumane conditions and barred him from the minimal civilized life's necessities who did in fact have a culpable state of mind to pose a substantial risk of serious harm and has acted with deliberate indifference to plaintiffs health and safety, attributed to the actions of the execution and order, to confiscate and deactivate the lights.

**11.** For all the above listed paragraphs, Plaintiff cites an **8th Amendment, Cruel and Unusual Punishment** claim by the actions of the Defendnats who've acted with Deliberate Indifference to Plaintiff's Health and Safety.

**12.** In Opinion,Therefore, Plaintiff has asserted a valid statement of claims as required for all the above referenced paragraphs.

# Dismissal of 4th Amendment Claim

**No 4th Amendment Claim:**

**1.** Plaintiff avers and understands that he has impulsively and prematurely asserted a **4th Amendment** Claim, that while persons imprisoned for crimes enjoy many protections of the constitution, it is also clear that imprisonment comes with it the circumscription or loss of many rights. See, **Hudson v. Palmer, 468 U.S. 517, 524 (1984).**

**2.** The **4th Amendment** falls under the circumscription of rights loss by imprisoned prisoners.

**3.** Therefore and Accordingly, Plaintiff agrees that the Dismissal of the **4th Amendment** should be warranted and therefore request the **4th Amendment** to be dismissed as the defendants request of the Honorable Judge.

**WHEREFORE, Plaintiff Prays that the Honorable Judge Rambo understand the circumstances the plaintiff was subjected to and Prays the the Judge GRANT this here Motion in response to Defendants Motion to Dismiss and Deny the Defendants Motion to Dismiss, and in part, Grand Defendants Motion to Dismiss the 4th Amendment claim.**

**Respectfully Copied & Submitted.**

**Kani C. Little- 2400320**

**07/29/2024**

Kani C. Little
2400320
Franklin County Jail
1804 Opportunity Ave.
Chambersburg, PA 17201



RECEIVED
…RRISBURG, PA
6 2024
DEPUTY CLERK

Sylvia H. Rambo
United States Courthouse
1501 N. 6th Street
Harrisburg, PA 17102